O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MELISSA ZINNER, | ) | CASE NO. CV 10-09112 RZ |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Melissa Zinner contends that the Social Security Commissioner wrongly denied her claim for disability benefits.  Plaintiff argues that the Administrative Law Judge ("ALJ") erred in (1) evaluating two physicians' opinions; (2) assessing Plaintiff's credibility; (3) failing to find that she had the severe impairment of fibromyalgia; (4) failing to find that Plaintiff suffered from any mental limitations despite having a severe mental impairment; and (5) posing an incomplete hypothetical question to the vocational expert.  The Court agrees, in part, as explained below.

The Court first addresses Plaintiff's argument that the ALJ improperly evaluated the opinion of an examining psychiatrist, Dr. Singer.  Dr. Singer performed a post-hearing examination of Plaintiff at the ALJ's request.  (AR 72.)  He diagnosed Plaintiff with depression and opined, among other things, that Plaintiff's ability to understand , remember, and perform complex tasks was mildly impaired; her "ability to

relate and interact with coworkers and the public, as well as the ability to be supervised, [was] impaired by her mental constriction"; and Plaintiff's "mental lethargy would significantly interfere with [her] ability to complete a normal day of work." (AR 672-73.) The ALJ stated that she gave "greater weight to Dr. Singer's mental health assessment, since it is consistent with the treating source progress notes," (AR 34), but she did not incorporate any mental limitations into Plaintiff's residual functional capacity. (AR 29.) Thus, the ALJ erred by failing to provide specific and legitimate reasons for rejecting Dr. Singer's opinion as to Plaintiff's functional limitations. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The Court cannot find the error harmless. Had the ALJ accepted Dr. Singer's opinion that, for example, Plaintiff's ability to complete a normal workday was compromised, he might have found her disabled.

Relatedly, Plaintiff argues that the ALJ erred by finding that she had a severe mental impairment (depression) but failing to include any corresponding mental limitations in her residual functional capacity. The Ninth Circuit has noted a lack of "authority to support the proposition that a severe mental impairment must correspond to limitations on a claimant's ability to perform basic work activities." *Bray v. Commissioner*, 554 F.3d 1219, 1228-29 (9th Cir. 2009). However, it is "[m]ore important[] [that] the medical record supports the ALJ's conclusions" as to a claimant's residual functional capacity. *Id.* at 1229. As noted above, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Singer's opinions as to Plaintiff's mental limitations. On remand, the ALJ must reassess whether Plaintiff suffers from any mental limitations.

Plaintiff also challenges the ALJ's rejection of the opinion of her treating physician, Dr. Corzilius. Dr. Corzilius treated Plaintiff from 2005 through at least July 2008 and completed two questionnaires concerning her impairments and limitations. (AR 392-99, 454-61.) She noted that Plaintiff's diagnoses included lymphedema with recurrent cellulitis, "permanent nerve damage" from her mastectomy, chronic pain, fibromyalgia, and depression. Dr. Corzilius wrote that Plaintiff's prognosis was chronic and did not expect improvement. Plaintiff's symptoms included pain, fatigue, and inability to concentrate.

Dr. Corzilius opined, among other things, that Plaintiff could only occasionally carry weights of up to five pounds; Plaintiff had "significant limitations in doing repetitive reaching, handling, fingering, or lifting"; Plaintiff's "experience of pain, fatigue or other symptoms" would constantly "interfere with attention and concentration"; Plaintiff was incapable of tolerating even low stress; and Plaintiff would likely be absent from work more than three times per month.  (*Id.*)

The ALJ was required to provide specific and legitimate reasons to discredit Dr. Corzilius's opinion.  *See Batson v. Commissioner*, 359 F.3d 1190, 1194-95 (9th Cir. 2004).  Although the ALJ provided two reasons for doing so, they do not meet this standard.  First, the ALJ noted that Dr. Corzilius "allege[d] that [Plaintiff] has had marked limitations since 1993; however, [Plaintiff] was able to sustain substantial work activity until 2006."  (AR 32.)  The ALJ is referring to Dr. Corzilius's answer of "1993" to the question "[i]n your best medical opinion, what is the earliest date that the description of symptoms and limitations in this questionnaire applies"?  (AR 398, 460.)  The Court finds that Dr. Corzilius's brief, unexplained answer to a single question on a form is not a legitimate reason to discount her medical opinion stemming from a multiple-year treating relationship.  Most likely, Dr. Corzilius was referring to Plaintiff's 1993 mastectomy as the source of her lymphedema, cellulitis, nerve damage, and pain.  (*See* AR 223, 276, 361, 364.)  Without additional information from Dr. Corzilius, her answer to this question does not undermine her opinion.

The ALJ also faulted Dr. Corzilius's opinion because it "listed no objective imaging, testing, clinical findings or laboratory results" to support her assessment.  (AR 32.)  Although the opinions on the questionnaires themselves are somewhat bare, there is ample evidence from Dr. Corzilius and her colleagues at Kaiser Permanente in the record. For example, in February 2007, Dr. Corzilius increased Plaintiff's dosage of methadone even though it had "caused drowsiness" and referred her to pain management, wondering if an implanted nerve stimulator would "be of benefit in nerve damage [and] pain to [her] arm, shoulder, [and] chest."  Plaintiff's mother accompanied her to this appointment and

expressed "concern[] about [Plaintiff's] inability to function." (AR 208.)  In June 2007, Dr. Corzilius evaluated Plaintiff after she had been seen in the emergency room for cellulitis and again referred her for a pain management evaluation. (AR 282.)  Another record from Kaiser Permanente included neuropathy, postmastectomy lymphedema syndrome, and reflex sympathetic dystrophy in Plaintiff's list of "active problems," and assessed Plaintiff with "malaise and fatigue." (AR 256-57.)  It was improper for the ALJ to characterize Dr. Corzilius's opinion as unsupported without explaining how these and other records undermine it. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . . The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

Plaintiff also challenges the ALJ's rejection of her subjective symptom testimony.  An ALJ need not accept a claimant's statements as to subjective pain or symptoms, but can reject them for clear and convincing reasons. *Lester*, 81 F.3d at 834. Plaintiff asserts that the reasons cited by the ALJ were not legitimate.  First, the ALJ stated that Plaintiff's "alleged limitations due to severe and chronic pain . . . have not been confirmed by any medical provider." (AR 30.)  This reason is legally insufficient to discount Plaintiff's credibility.  Because, as the ALJ found, Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" (AR 30), the ALJ "may not reject [Plaintiff's] subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986)).  Moreover, the ALJ does not explain how the many references to Plaintiff's chronic pain in the record fail to support her allegations. (*See, e.g.*, AR 208, 256, 276, 282, 348, 357, 364.)

Next, the ALJ found that Plaintiff "failed to meet her burdens of proof as to how, and when, her condition so deteriorated that it precludes her past work." The ALJ based this conclusion on Plaintiff's report to an examining physician that she stopped working three weeks before her appointment in June 2007, despite her alleged onset date of February 1, 2007, and Dr. Corzilius's opinion that Plaintiff's "extreme functional limitations and symptoms" applied as early as 1993. (AR 30-31.) As far as Plaintiff's apparent work after her alleged onset date, the ALJ did not explain how the examining physician's reference to Plaintiff's work clearly and convincingly undermined Plaintiff's credibility. The ALJ did not solicit any testimony about this at the hearing (*see* AR 62-67), and, aside from the examining physician's brief notation, the only relevant evidence of record appears to be a June 18, 2007, notice to Plaintiff from an employer terminating her "due to violation of attendance policy (excessive absenteeism) during introductory period. [Plaintiff] was absent 69% of the time (8.25 days out of 12 working days) . . . ." (AR 184.) Without additional information, Plaintiff's apparent unsuccessful work attempt does not undermine her disability claim. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007) (holding that an attempt to work may support a disability claim if it is cut short by disability-related impairments); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Similarly, without additional information, Dr. Corzilius's statement that Plaintiff's limitations may have begun as early as 1993 has no bearing on Plaintiff's credibility.

Third, the ALJ found that the objective medical evidence conflicted with some of Plaintiff's allegations. The ALJ observed that Plaintiff "alleged that she cannot lift over 5 [pounds] or a bottle of milk," but her "Jamar grip strength tested at 30 [pounds], bilaterally, suggesting far more physical strength in both of [Plaintiff's] hands than she is willing to admit." (AR 31.) The ALJ cites no evidence that a *grip strength* of 30 pounds is inconsistent with an inability to *lift* more than five pounds. Moreover, Plaintiff's potential ability to lift more weight than she alleges does not demonstrate an ability to

perform substantial gainful activity or undermine her other allegations, such as extreme chronic pain. Next, the ALJ wrote that Plaintiff had described "that her arm would swell to twice its size sometimes," but "no such extreme edema has been documented by any medical provider." (AR 31.) Medical records make clear that Plaintiff has chronic lymphedema and recurrent cellulitis in her right arm (*e.g.,* AR 357), and that these conditions can limit her ability to function. (*E.g.,* AR 348 (urgent care / after hours clinic progress note stating that Plaintiff has had "progressively worse" pain after cleaning her home last week).) Although it is possible that Plaintiff exaggerated when she said that her arm doubled in size, her imprecise and non-medical description of her symptoms does not clearly and convincingly undermine her credibility.

Finally, the ALJ discounted Plaintiff's credibility because she "listed numerous side-effects of her medications[] in her report to the State Agency," but "[n]owhere in the treating medical records are these side-effects listed with the same frequency, or to the same degree of severity, as [Plaintiff] has described." (AR 31.) The ALJ is correct that Plaintiff provided a long list of side effects on a disability report form that asked for side effects, though she noted she "cannot remember which ones are caused by which." (AR 175-79.) There is some record support that Plaintiff's medications caused side effects. (*E.g.,* AR 208 (Dr. Corzilius noting that increased dosage of methadone caused drowsiness).) However, Plaintiff's primary claim is that her "pain is too severe for [her] to do any type of work." (AR 56.) Accordingly, even if the ALJ properly discredited Plaintiff's report of numerous side effects, this reason does not clearly and convincingly undermine her overall credibility.

Plaintiff also challenges the ALJ's determination that she did not have the severe impairment of fibromyalgia. Although there is some evidence supporting Plaintiff's claim that she suffers from fibromyalgia, there is no indication that she was harmed by the ALJ's failure to consider this a severe impairment. After determining that Plaintiff had any severe impairments at step two, the ALJ was required to consider all evidence of functional limitations caused by any medically determinable impairments, including any that were not

identified as severe at step two.  20 C.F.R. § 416.923.  Plaintiff has not identified any functional limitations arising from her fibromyalgia that were not captured in the ALJ's assessment of her residual functional capacity.  Accordingly, any error in omitting this impairment at step two was harmless.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that an ALJ's failure to list an impairment at severe at step two was harmless error where the ALJ later considered the functional limitations caused by that impairment).  On remand, however, the ALJ may wish to reconsider whether Plaintiff has the severe impairment of fibromyalgia.

Remand is warranted for the ALJ to properly evaluate Plaintiff's credibility and the opinions of Drs. Singer and Corzilius.  This could affect the ALJ's assessment of Plaintiff's residual functional capacity and may necessitate new vocational expert testimony.  The Court therefore need not address Plaintiff's argument that the ALJ erred by failing to pose a proper hypothetical question to the vocational expert.  On remand, however, the ALJ must ensure that any hypothetical question to a vocational expert sets out all of Plaintiff's limitations and restrictions.  *Valentine v. Commissioner*, 574 F.3d 685, 690 (9th Cir. 2009).  If the ALJ again finds that Plaintiff "can reach only occasionally with the right (dominant) upper extremity" (AR 29), she should include this limitation in her hypothetical to the vocational expert—not a limitation to only occasional *over-the-shoulder* reaching.  (AR 71.)

In accordance with the foregoing, the decision is reversed.  The matter is remanded to the Commissioner, who shall properly assess Plaintiff's subjective complaints and Drs. Singer's and Corzilius's opinions, and otherwise proceed as appropriate.

IT IS SO ORDERED.

DATED:  December 16, 2011

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE